# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * * *
HEATHER THOMAS,                      *
                                     *    No. 18-1948V
                     Petitioner,     *
                                     *    Special Master Christian J. Moran
                                     *
v.                                   *    Filed:  August 6, 2024
                                     *
SECRETARY OF HEALTH                  *
AND HUMAN SERVICES,                  *
                                     *
                     Respondent.     *
* * * * * * * * * * * * * * * * * * ** *
```

<u>Anne C .Toale</u>, Maglio Christopher and Toale, Sarasota, FL, for Petitioner;
<u>Tyler King</u>, United States Dep't of Justice, Washington, DC, for Respondent.

## UNPUBLISHED DECISION AWARDING
## ATTORNEYS' FEES AND COSTS[1]

Pending before the Court is petitioner Heather Thomas's motion for final attorneys' fees and costs. She is awarded **$224,703.40**.

        \*       \*      \*

On December 20, 2018, petitioner filed for compensation under the Nation Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10 through 34. Petitioner alleged that an influenza vaccine caused her to suffer Lambert-Eaton myasthenic syndrome ("LEMS"). Am. Pet., filed Jun. 1, 2023. After respondent

---

[1] Because this published decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This posting means the decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

contested entitlement, the parties retained medical experts, with petitioner retaining Dr. Andrew R. Pachner, and respondent retaining Dr. Neil Rombert. Exhibits (Exs.) 28-29, 64; Exs. A-C. On July 15, 2022, moved for an award of attorneys' fees and costs on an interim basis, requesting $155,882.50 in fees and $34,741.44 in costs, for a total of $190,623.94. Pet'r's Mot., filed July 15, 2022. On January 19, 2023, the undersigned awarded petitioner $157,301.27, with a portion of the fees deferred. 2023 WL 2155057.

A two-day entitlement hearing was held on July 18-19, 2023. On July 21, 2023, the undersigned issued his decision denying compensation on the bases that petitioner failed to present a persuasive theory to explain how a flu vaccine can cause LEMS, she did not persuasively establish that the flu vaccine caused her LEMS, and thus failed to meet her burden of proof. 2023 WL 5167257.

On October 27, 2023, petitioner filed a motion for final attorneys' fees and costs ("Fees App."). Petitioner indicates that she incurred additional attorneys' fees and costs after her motion interim fees, and requests now requests additional attorneys' fees of $159,220.20 and attorneys' costs of $65,483.20 (which includes $31,322.67 in interim expert costs that were previously deferred, and $35,160.53 in case costs that were incurred since the interim fee award), for a total additional request of $224,703.40. Id. at 2. Pursuant to General Order No. 9, counsel for petitioner represents that there were no personal incurred related to the prosecution of this case. Id.

On November 1, 2023, respondent filed a response to petitioners' motion. Resp't's Resp. Respondent argues that "[n]either the Vaccine Act nor Vaccine Rule 13 requires respondent to file a response to a request by a petitioner for an award of attorneys' fees and costs." Id. at 1. Respondent adds, however that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." Id. at 2. Additionally, he recommends "that the Court exercise its discretion" when determining a reasonable award for attorneys' fees and costs. Id. at 3. Petitioner did not file a reply thereafter.

\*       \*       \*

Although compensation was denied, petitioners who bring their petitions in good faith and who have a reasonable basis for their petitions may be awarded attorneys' fees and costs. 42 U.S.C. § 300aa-15(e)(1). In this case, although petitioner's claim was ultimately unsuccessful, the undersigned finds that good faith and reasonable basis existed throughout the matter. Respondent has also indicated that he is satisfied that the claim has good faith and reasonable basis.

Respondent's position greatly contributes to the finding of reasonable basis.  See Greenlaw v. United States, 554 U.S. 237, 243 (2008) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.").  A final award of reasonable attorneys' fees and costs is therefore proper in this case and the remaining question is whether the requested fees and costs are reasonable.

The Vaccine Act permits an award of reasonable attorney's fees and costs. §15(e). The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act.  This is a two-step process.  Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1348 (Fed. Cir. 2008).  First, a court determines an "initial estimate … by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings.  Id. at 1348.  Here, because the lodestar process yields a reasonable result, no additional adjustments are required.  Instead, the analysis focuses on the elements of the lodestar formula, a reasonable hourly rate and a reasonable number of hours.

In light of the Secretary's lack of objection, the undersigned has reviewed the fee application for its reasonableness.  See McIntosh v. Sec'y of Health & Human Servs., 139 Fed. Cl. 238 (2018).

A.    Reasonable Hourly Rates

Under the Vaccine Act, special masters, in general, should use the forum (District of Columbia) rate in the lodestar calculation.  Avera, 515 F.3d at 1349. There is, however, an exception (the so-called Davis County exception) to this general rule when the bulk of the work is done outside the District of Columbia and the attorneys' rates are substantially lower.  Id. 1349 (citing Davis Cty. Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency, 169 F.3d 755, 758 (D.C. Cir. 1999)). In this case, all the attorneys' work was done outside of the District of Columbia.

The undersigned has reviewed the hourly rates requested by petitioner for the work of her counsel at Maglio Christopher and Toale. Most of the attorney work was done by either Ms. Anne Toale, who is currently undersigned counsel, or Mr. Joseph Vucovich. Ms. Alison Haskins, Mr. Benjamin Christian, Ms. Jessica Olins, and Ms. Jessi Huff, also provided a small amount of supporting work. The rates requested are consistent with what counsel have previously been awarded for their Vaccine Program work and the undersigned finds them to be reasonable

herein for work performed in the instant case. See Stolec v. Sec'y of Health & Human Servs., No. 19-195V, 2023 WL 7222624, at *2 (Fed. Cl. Spec. Mstr. Sept. 13, 2023).

B.      Reasonable Number of Hours

The second factor in the lodestar formula is a reasonable number of hours. Reasonable hours are not excessive, redundant, or otherwise unnecessary. See Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993). The Secretary also did not directly challenge any of the requested hours as unreasonable.

The undersigned has reviewed the submitted billing entries and finds the request to be reasonable. The billing entries contain sufficient detail to permit the undersigned to assess their reasonableness, and upon review none appear to be objectionable. Respondent also has not indicated that he finds any of the billing entries to be objectionable.

The reasonable activities include spending approximately 13 hours writing a memorandum in support of expert rates.  This time is credited in full.  Because the memorandum is about expert rates generally, attorneys from this law firm may submit substantially the same memorandum in other cases.  But, attorneys in future cases should not charge for reproducing this work product.  If attorneys do seek compensation for a memorandum on expert rates that closely resembles the memorandum drafted in this case and if the Secretary interposes an objection, then it is likely fees will be reduced.  But, that potential concern about future invoices in future cases does not prevent compensation being made in Ms. Thomas's case.

Therefore, petitioner is awarded final attorneys' fees in the amount of $159,220.20.

C.      Costs Incurred

Like attorneys' fees, a request for reimbursement of costs must be reasonable. Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (Fed. Cl. 1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994). Petitioner requests a total of $65,483.20 in attorneys' costs. Fees App. at 3. This amount is comprised of postage, obtaining medical records, medical literature, legal research fees, rental of a hotel boardroom for the expert's use during the hearing for three days at $300.00 per day, hearing transcripts, one hour of work performed by Dr. Steven Bradfute, and work performed by petitioner's expert, Dr. Andrew R. Pachner. Fees App. Ex. C.

Petitioner is requesting $65,483.20 in costs, which includes $31,322.67 requested in the motion for an award of attorneys' fees and costs on an interim basis.  This request was deferred because Dr. Pachner had not testified.  The remaining $34,160.53 in costs is mostly comprised of costs associated with Dr. Pachner.  Petitioner supported the proposed costs for Dr. Pachner with a 26-page memorandum as well as fee schedules.

Other than the costs associated with Dr. Pachner, most of the other items of requested costs are relatively routine.  See Exhibit 92.  The only item that merits more than a passing analysis is an invoice from Steven Bradfute.  Id. at 13.  Dr. Bradfute apparently attempted to develop a theory based upon molecular mimicry but did not prepare a report filed into evidence.  See Exhibit 92 (attorney time sheets), entries from May 2, 2023 through May 4, 2023.  His charge of $500 is accepted as reasonable.  Likewise, the charges other than for Dr. Pachner are reasonable.

Dr. Pachner prepared seven invoices.  Exhibit 93 (invoices prepared before motion for interim attorneys' fees was filed) at 5, 9, 11-12, Exhibit 92 (invoices prepared after motion for interim attorneys' fees was filed) at 11, 33-34.  These invoices document approximately 120 hours of work for which Dr. Pachner has proposed charging $500 per hour.  The total requested cost for Dr. Pachner is approximately $60,433.00.

Petitioner, as mentioned, defended Dr. Pachner's proposed charges with a relatively lengthy memorandum.  With that memorandum, petitioner supported the reasonableness of Dr. Pachner's proposed hourly rate with fee schedules from other neurologists.  See Exhibit 98.  The development of this argument and evidence was generally appropriate because special masters have not analyzed an appropriate hourly rate for Dr. Pachner.  See Howells v. Sec'y of Health & Hum. Servs., No. 17-142V, 2023 WL 3750380, at *7 (Fed. Cl. Spec. Mstr. June 1, 2023) (deferring adjudication of this issue); but see Borders v. Sec'y of Health & Hum. Servs., No. 19-535V, 2023 WL 3743559, at *4 (Fed. Cl. Spec. Mstr. May 31, 2023) (accepting Dr. Pachner's proposed charge of $500 per hour for two hours of work).

Although petitioner's memorandum attempted to justify Dr. Pachner's proposed charges, the memorandum sometimes wandered off course.  For example, petitioner argued that an informal cap of $500 per hour for an expert's work is arbitrary.  Pet'r's Memo. at 2, 10-11.  Regardless of the merit of this argument, whether some experts should be paid more than $500 per hour is irrelevant to the present case because Dr. Pachner has requested $500 per hour.  Id.

at 16.  It also bears noting that in the undersigned's experience, expert rates may have stagnated because petitioners, their attorneys, and their experts did not expend the time and effort necessary to justify increased hourly rates with evidence.  When petitioners have supported increases in hourly rates with evidence, special masters have evaluated the evidence and made appropriate factual findings.

Here, Ms. Thomas submitted evidence that supports a proposition that some neurologists charge more than $700 per hour.  Exhibit 98.  This evidence goes a long way to supporting the hourly rate proposed for Dr. Pachner, $500 per hour.

However, Dr. Pachner cannot be awarded $500 per hour just because some other neurologists might receive that much per hour or because he has been compensated at that rate in other cases.  The "quality of the reports and testimony that [an expert] provided in other cases cannot be used as a proxy for the quality of the reports and testimony that he provided in this case. Nor can a flawed expert opinion be rehabilitated merely because the expert has testified successfully in prior cases."  See La Londe v. Sec'y of Health & Hum. Servs., 110 Fed. Cl. 184, 208 (2013),  aff'd sub nom. LaLonde v. Sec'y of Health & Hum. Servs., 746 F.3d 1334 (Fed. Cir. 2014).  As Ms. Thomas recognizes, the quality of the opinion is another factor.  Pet'r's Memo. at 18.  An expert's hourly rate may be reduced due to poor performance.  Frantz v. Sec'y of Health & Hum. Servs., 146 Fed. Cl. 137, 146 (2019).  In Ms. Thomas's case, Dr. Pachner's opinion was not good.  The lack of persuasiveness from Dr. Pachner contributed to a bench ruling that Ms. Thomas had failed to prove her case.  Entitlement Decision, 2023 WL 5167257.

If respondent had identified an objection to Dr. Pachner's proposed hourly rate due to a deficiency in Dr. Pachner's performance, then Dr. Pachner's proposed hourly rate might have been reduced.  But, respondent did not contest the proposed hourly rate.  This lack of objection warrants consideration.  See Vaccine 13(a)(3).  Consequently, due in part to the evidence Ms. Thomas has presented supporting Dr. Pachner's proposed hourly rate and due in part to the lack of objection from the Secretary, Dr. Pachner's proposed hourly rate of $500 per hour is accepted as reasonable.

As to the reasonable number of hours, respondent again did not interpose any objection with particularity.  Dr. Pachner's invoices generally describe his activities with enough specificity to determine that the amount of time that he spent was reasonable.  Thus, all Dr. Pachner's proposed time is credited.

Petitioner has provided adequate documentation supporting the requested costs and all are reasonable in the undersigned's experience. Petitioner is therefore awarded final attorneys' costs of $65,483.20.

D.   <u>Conclusion</u>

The Vaccine Act permits an award of reasonable attorney's fees and costs. 42 U.S.C. § 300aa-15(e). Accordingly, I award a total of **$224,703.40** (representing $159,220.20 in attorneys' fees and $65,483.20 in attorneys' costs) as a lump sum in the form of a check jointly payable to petitioner and petitioner's counsel, Anne Toale.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[2]

**IT IS SO ORDERED**.

<u>s/Christian J. Moran</u>
Christian J. Moran
Special Master

---

[2] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.